Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA  94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com

*Attorney for Plaintiffs*

[Additional counsel on signature page.]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| LOURDES GALVAN and ELEEANNA GALVAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC, a Delaware limited liability company, and ALPHABET INC., a Delaware corporation,<br><br>        Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Lourdes Galvan and Eleeanna Galvan (collectively "Plaintiffs") complain upon knowledge as to themselves and their own actions and upon information and belief as to all other matters against Defendants Alphabet Inc. and Google LLC (collectively, "Google"), as follows:

**SUMMARY OF ALLEGATIONS**

1. This action arises from Defendants' unlawful and intentional recording of individuals' confidential communications without their consent from approximately May 18, 2016 to the Present (the "Class Period") in violation of the California Invasion of Privacy Act, Cal. Penal Code §632, California Consumer Legal Remedies Act, Cal. Civ. Code §1750, and California Unfair Competition Law, Cal. Bus. & Prof. Code §17200.

2. Google Assistant is a voice-recognition software program developed by Google that allows individuals to use their voice to ask questions and receive answers based on information available on the internet. Google preloads Google Assistant on devices, including its own smart home speakers, Google Home and Google Home Mini, and its Pixel smartphones. Google Assistant also comes pre-installed on most smartphones running Google's Android operating system and many other electronics manufactured by third parties ("Google Assistant Enabled Devices").

3. Google Assistant Enabled Devices are only supposed to record conversations preceded by the utterance "Okay, Google" or "Hey, Google" ("hot word(s)") or the pressing of a button on the device. California law prohibits the recording of oral communications without the consent of all parties to the communication. California's privacy laws recognize the unique privacy interest implicated by the recording of someone's voice. That privacy interest has been heightened by companies exploiting consumers' private data.

4. Individuals who have purchased or used Google Assistant Enabled Devices and interacted with Google Assistant have not consented to Google recording conversations where "Okay, Google" or "Hey, Google" were not uttered or where no button has been pressed. Similarly, minors with no Google account who did not set up Google Assistant Enabled Devices have not consented to these recordings.

5. On July 10, 2019, Belgian news outlet VRT NWS reported that Google was using Google Assistant Enabled Devices to record millions of individuals, including minors, without their

1
CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

consent.[1] According to the VRT NWS report, Google Assistant Enabled Devices record individuals' conversations where no hot word had been uttered or no button had been pressed and hires people to listen to them to improve the functionality of Google Assistant. Each recording is a violation of California law.

6. Billions of Google Assistant Enabled Devices were sold to consumers during the Class Period. Many of these consumers would not have bought their Google Assistant Enabled Devices if they had known Google was recording their conversations without consent.

7. Given the concealed and secretive nature of Defendants' conduct, more evidence supporting the allegations in this Complaint will be uncovered after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

8. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative class members defined below and minimal diversity exists because more than two-thirds of putative class members are citizens of a state different than Defendants.

9. This Court has general personal jurisdiction over Defendants because their principal place of business is in California. Additionally, Defendants are subject to specific personal jurisdiction in this State because a substantial part of the events and conduct giving rise to Plaintiffs' and the class' claims occurred in this State.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial portion of the conduct described in this Complaint was carried out in this District. Furthermore, Defendants Alphabet Inc. and Google LLC are headquartered in this District and subject to personal jurisdiction in this District.

---

[1] https://www.vrt.be/vrtnws/en/2019/07/10/google-employees-are-eavesdropping-even-in-flemish-living-rooms/ (last accessed July 25, 2019).

11. **Intradistrict Assignment (L.R. 3-2(c) and (e) and 3-5(b))**: This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred in Santa Clara County. Pursuant to L.R. 3-2(e), all civil actions which arise in Santa Clara County shall be assigned to the San Jose Division.

## PARTIES

### A. Plaintiffs

12. Plaintiff Lourdes Galvan ("Plaintiff Galvin") is a natural person and citizen of the State of California and a resident of Los Angeles County.

13. Plaintiff Eleeanna Galvan ("Plaintiff E.G.") was a minor during a portion of the Class Period and brings this suit on her own. Plaintiff E.G. is a natural person and citizen of the State of California and a resident of Los Angeles County.

### B. Defendants

14. Defendant Alphabet Inc. ("Alphabet") is a Delaware corporation, organized and existing under the laws of the State of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043-1351. Alphabet is the successor issuer to, and parent holding company of, Google LLC. Alphabet owns all the equity interests in Google LLC. The reorganization of Google LLC into Alphabet was completed in 2015.

15. Defendant Google LLC ("Google") is a limited liability company existing under the laws of the State of Delaware, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## SUBSTANTIVE ALLEGATIONS

### I. GOOGLE AND GOOGLE ASSISTANT

16. Google's unofficial motto has always been "don't be evil." Google was founded in 1998 by Larry Page and Sergey Brin as a search engine website. Google's success led to it launching numerous other products.

17. One of these products is Google Assistant. Google Assistant is a computer program developed by Google that is pre-installed on numerous electronic devices, including phones,

speakers, displays, cars, tv's, laptops, and tablets, manufactured by Google and other companies ("Google Assistant Enabled Devices").

18.     Google Assistant is intended to provide its users with easy access to information available on the internet and/or control over other internet-connected devices using their voice.  To facilitate this process, Google Assistant listens for two sets of "hot words" – "Hey Google" and "Okay Google."  These phrases indicate the start of a user command.

19.     Google Assistant Enabled Devices listen for these hot words by recording and analyzing short snippets of audio from their surroundings.  This audio is stored locally in the Google Assistant Enabled Device's random-access memory ("RAM").  Audio stored in a Google Assistant Enabled Device's RAM is continuously overwritten as new audio is recorded and analyzed until a hot word is detected.

20.     When a Google Assistant Enabled Device detects a hot word, it switches into "active listening" mode.  At this point, the Google Assistant Enabled Device begins transmitting audio to Google for analysis.  The purpose of this analysis is to allow the Google Assistant Enabled Device to respond to the user commands issued after one of the hot words.  For example, if a user asks Google Assistant "Hey Google, what is the weather in Los Angeles?" the Google Assistant will transmit that audio to Google for analysis and to provide a response.  Users can also ask Google Assistant to, among other things, provide reminders ("Remind me to pick up groceries at 5 P.M."), set timers ("Set a timer for 20 minutes"), or control other internet-connected "smart devices" such as a television or music player.

21.     Significantly, Google Assistant Enabled Devices are *only* supposed to transmit recordings of audio to Google if users issue one of the hot words or otherwise approve of "active listening" mode by pressing a button on certain Google Assistant Enabled Devices.  Google accordingly, denies recording other user conversations:

**Is Google Home recording all of my conversations?**

Google Home listens in short (a few seconds) snippets for the hotword.  Those snippets are deleted if the hotword is not detected, and none of that information leaves your device until the hotword is heard.  When Google Home detects that you've said "Ok Google" or "Hey Google", or that you've physically long pressed the top of your Google Home device, the LEDs on top of the device light up to tell

you that recording is happening, Google Home records what you say, and sends that recording (including the few-second hotword recording) to Google in order to fulfill your request. You can delete these recordings through My Activity anytime.[2]

22. There are approximately 2.3 billion Google Assistant Enabled devices in the world. This includes at least 51 million Google Home voice activated speakers – devices that function like a radio that can respond to user commands – and more than 2 billion smartphones running Google's Android operating system.

## II. GOOGLE ASSISTANT IS RECORDING INDIVIDUALS WITHOUT THEIR CONSENT

23. On July 10, 2019, VRT NWS, a Belgian news media outlet, reported that "thousands of [Google] employees" are systematically listening to audio files recorded by Google Home smart speakers and the Google Assistant smartphone app from devices around world, including audio that does not contain a hot word.

24. According to VRT NWS, when an individual interacts with Google Assistant's speech recognition feature, the software automatically generates a script of the conversation which is then stored along with the audio recording. Google employees and subcontractors are then tasked with analyzing whether Google Assistant has accurately interpreted the individual's speech. To do so, Google's subcontractors log into the online tool and are presented with a list of audio files and corresponding transcripts to analyze. The reviewers double check that "every cough and every audible comma" is reflected in the transcript. VRT NWS reports that they "have 3 sources confirming that this is the way Google works."

25. VRT NWS was given access to "more than a thousand" audio recordings and identified 153 conversations "that should never have been recorded and during which the command 'Okay Google' was clearly not given." According to VRT NWS these recordings include "bedroom conversations, conversations between parents and their children" as well as "professional phone calls containing lots of private information."

---

[2] https://support.google.com/googlenest/answer/7072285?hl=en (last accessed July 25, 2019).

26. The level of detail in the recordings reviewed by VRT NWS was substantial enough to enable VRT NWS to identify the individuals without VRT NWS having any of their information. VRT NWS tracked down one couple and played the audio recording from their Google Assistant Enabled Device. The couple immediately identified the voices as those "of their son and their grandchild."

27. VRT NWS's report reveals that instead of only recording what an individual says after uttering a hot word, Google Assistant Enabled Devices record anything said that is preceded by anything that *remotely* sounds like a hot word, and that even after Google discovers that it has wrongly recorded a conversation, it nonetheless keeps and analyzes the recording.

28. In response to VRT NWS's report, Google confirmed that their language reviewers listen to recorded and stored conversations, claiming that only "0.2 percent" of all audio snippets are subject to human review. Google also acknowledged that "devices that have the Google Assistant built in may experience what we call a 'false accept.' This means that there was some noise or words in the background that our software interpreted to be the hot word (like "Ok Google")." Google defends their actions as "necessary to creating products like Google Assistant."

29. Significantly, Google Assistant makes no distinction between the voices of adults and children. As a result, Google Assistant Enabled Devices are recording children and transmitting that information to Google whenever they say a word that *remotely* sounds like a hot word to the Google Assistant Enabled Device. This is especially troubling as children *cannot* consent to being recorded by the Google Assistant Enabled Device.

**III. GOOGLE UNLAWFULLY RECORDED PLAINTIFFS WITHOUT THEIR CONSENT**

30. Plaintiffs here each either owned and/or interacted with a Google Assistant Enabled Device during the Class Period and were recorded by Google without their consent.

31. Plaintiff Galvan and Plaintiff E.G. owned a Samsung Galaxy Tab device during the Class Period. Plaintiff E.G's Samsung Galaxy Tab device contained the Google Assistant (a/k/a "Google Assistant Enabled Device") which Plaintiff E.G. activated upon purchase of the device. Plaintiff Galvan and Plaintiff E.G. interacted with the Google Assistant Enabled Device repeatedly

during the Class Period. As described above, Google and this Google Assistant Enabled Device unlawfully recorded Plaintiff Galvan and Plaintiff E.G. without their consent on multiple occasions, including when they failed to utter a hot word.

32. At no point did Plaintiffs consent to these unlawful recordings. Google does not disclose that it records conversations that are not preceded by a hot word. Plaintiff Galvan and Plaintiff E.G., therefore, did not agree to be recorded by their Google Assistant Enabled Device, respectively. Moreover, Google could not have obtained consent from Plaintiff E.G., who was a minor during a portion of the Class Period.

33. Plaintiffs would like to continue to use Google Assistant Enabled Devices in the future, but will be uncertain as to whether Google has ceased its unlawful practices and violation of their privacy rights without the equitable relief requested herein, specifically an injunction prohibiting Google from engaging in the unlawful practices alleged herein.

## CLASS ACTION ALLEGATIONS

34. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All individuals who were recorded by a Google Assistant Enabled Device without their consent from at least as early as May 18, 2016 to the present (the "Class Period"). Within the Class is a Subclass of those who are or were minor children and were recorded by a Google Assistant Enabled Device during the Class Period.[3]

35. Excluded from each Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

---

[3] Plaintiffs have defined the Class based on currently available information and hereby reserves the right to amend the definition of the Class, including, without limitation, the Class Period.

36. **Ascertainability:** Membership of the Class is defined based on objective criteria, and individual members will be identifiable from Defendants' records, including the Google accounts associated with each Google Assistant Enabled Device.

37. **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals, if not millions of individuals, and their members can be identified through Defendants' records.

38. **Predominant Common Questions:** The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

    a. Whether Google Assistant Enabled Devices record individuals absent that user uttering a hot word or otherwise activating the device;

    b. Whether Google Assistant Enabled Devices record children who interact with them; and

    c. Whether individuals who use Google Assistant Enabled Devices have a reasonable expectation of privacy under California law.

39. **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the proposed Class. Plaintiffs and Class members suffered an invasion of privacy as a result of Defendants' wrongful conduct that is uniform across the Class.

40. **Adequate Representation:** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class. They have retained counsel competent and experienced in complex litigation and class actions, including privacy violations. Plaintiffs have no interest that is antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

41. **Substantial Benefits:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this

controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

42. Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

43. California's substantive laws apply to every member of the Class, regardless of where in the United States the Class member resides. Defendants' Terms of Service state: "By using our Services, you are agreeing to these terms. Please read them carefully."

44. Specifically, Defendants' Terms of Service state under the subheading "About These Terms" that: "The laws of California, U.S.A., excluding California's conflict of laws rules, will apply to any disputes arising out of or relating to these terms or the Services. All claims arising out of or relating to these terms or the Services will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts."[4]

45. By choosing California law for the resolution of disputes in the agreement, Google concedes that it is appropriate for this Court to apply California law to the instant dispute.

46. Further, California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

47. Defendants' United States headquarters and principal place of business is located in California. Defendants also own property and conduct substantial business in California, and

---

[4] *See* https://policies.google.com/terms?hl=en-US (last accessed July 23, 2019).

therefore California has an interest in regulating Defendants' conduct under its laws. Defendants' decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

48. California is also the state from which Defendants' alleged misconduct emanated. This conduct similarly injured and affected Plaintiffs and all other Class members.

49. The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
Violation of the California Invasion of Privacy Act
Cal. Penal Code §632
(On Behalf of Plaintiffs and the Class)

50. Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

51. Plaintiffs and Class members owned or interacted with Google Assistant through Google Assistant Enabled Devices during the Class Period.

52. Plaintiffs and Class members reasonably expected, based on Google's representations, that Google was not recording them unless they uttered one of the hot words.

53. Despite Google's representations, Plaintiffs' Google Assistant Enabled Devices created recordings that were transmitted to Google of interactions not preceded by the utterance of a hot word during the Class Period. These recordings were made without Plaintiffs' consent.

54. Additionally, Plaintiffs and the Class members who are minors never consented to being recorded by Google, nor did Google even attempt to seek such consent. The parents of Plaintiffs and Class members who are minors likewise never consented to Google recording their children's interactions with such Google Assistant Enabled Devices.

55. Google has publicly acknowledged in news reports that such unauthorized recording occurred during the Class Period. *See* ¶28 above.

56. By recording Plaintiffs and the Class members when they didn't use hot words or otherwise consent, Google "intentionally and without the consent of all parties to a confidential communication" used an "electronic amplifying or recording device to . . . record the confidential communication" in violation of California law. *See* Cal. Penal Code §632.

57. Google is able, and the Court should require it, to destroy the recordings of Plaintiffs' and the Class members' interactions with Google Assistant Enabled devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

58. Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction requiring Google to obtain consent prior to recording a minor's Google Assistant interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages of $5,000 per violation under Cal. Penal Code §637.2; and (3) costs and reasonable attorneys' fees under Cal. Code of Civil Procedure §1021.5.

**SECOND CLAIM FOR RELIEF**
**Violation of the California Unfair Competition Law**
**Cal. Business & Professions Code §17200**
**(On Behalf of Plaintiffs and the Class)**

59. Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

60. Google engaged in business acts and practices deemed "unlawful" under the UCL, because, as alleged above, Google unlawfully recorded and stored Plaintiffs and Class members' interactions without consent in violation of California Invasion of Privacy Act, Cal. Penal Code §632, and California Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq*.

61. Google also engaged in business acts and practices deemed "unlawful" under the UCL, because, Google unlawfully recorded and stored Plaintiff E.G.'s and minor Class members' interactions without consent, which violates public policy as declared by specific statutory provisions, including California Family Code §6701 and §6710, which prohibit Defendants from obtaining consent by minors.

62. Specifically, California Family Code §6701 states that: "A minor cannot do any of the following: (a) Give a delegation of power . . . ." California Family Code §6710 states that: "Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative."

63. Google did not obtain the minor Plaintiff E.G.'s consent to record their confidential communications. Google could not obtain consent to record the minor Plaintiff E.G.'s confidential communications. To the extent that Google attempts to claim that it obtained the minor Plaintiff E.G.'s consent, pursuant to California Family Code §6710, Plaintiff E.G. disaffirms such consent.

64. Google also engaged in business acts or practices deemed "unfair" under the UCL because, as alleged above, Google failed to disclose during the Class Period that these Google Assistant Enabled Devices, including Google Home and Android phones, were recording, storing, and analyzing Plaintiffs' and the Class members' speech without their consent. Unfair acts under the UCL have been interpreted using three different tests: (1) whether the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business practice outweighs the utility of the defendant's conduct; and (3) whether the consumer injury is substantial, not outweighed by any countervailing benefits to consumers or competition, and is an injury that consumers themselves could not reasonably have avoided. Defendants' conduct is unfair under each of these tests. Google's conduct alleged is unfair under all of these tests.

65. As described above, Google's conduct violates the policies underlying California's Privacy Law as well as Family Code §6710. The gravity of the harm of Google's secret recording of Plaintiffs' and Class members' communications, including those by minors, is significant and there is no corresponding benefit to consumers of such conduct. Finally, because Plaintiffs and Class members were completely unaware of Google's secret recordings, they could not have possibly avoided the harm.

66. Under the UCL, a business practice that is likely to deceive an ordinary consumer constitutes a deceptive business practice. Google's failure to disclose that Google Assistant Enabled Devices were recording, storing, and analyzing Plaintiffs' and the Class members' communications without their consent is likely to deceive Class members and, in fact, did deceive Plaintiffs. Google's conduct therefore constitutes deceptive business practices in violation of Cal. Bus. & Prof. Code §17200.

67. Had Plaintiffs known that their communications would be recorded, they would not have purchased a Google Assistant Enabled Device. Plaintiffs and the Class members have a property interest in any recordings of their communications. By surreptitiously recording the Plaintiffs' and Class members' communications, Google has taken property from Plaintiffs and the Class members without providing just or any compensation.

68. Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction requiring Google to obtain consent prior to recording a minor's Google Assistant interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; and (2) restitution of Plaintiffs' and the Class members' money and property lost as a result of Google's acts of unfair competition.

**THIRD CLAIM FOR RELIEF**
**Violation of the California Consumers Legal Remedies Act**
**Cal. Civ. Code §1750, *et seq.***
**(On Behalf of Plaintiffs and the Class)**

69. Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

70. By failing to disclose that Google Assistant Enabled Devices were recording, storing, and analyzing Plaintiffs' and the Class members' communications without consent, Google engaged in "unfair methods of competition and unfair or deceptive acts . . . in a transaction . . . that result[ed] . . . in the sale . . . of goods" to Plaintiffs and the Class members in violation of Cal. Civ. Code §1750 and Cal. Civ. Code §1770(a)(5), (7), (9), (14), and (16). Indeed, Google's conduct constitutes a failure to disclose material information – information that Google has a legal duty to disclose under Penal Code §632.

71. Plaintiffs would not have purchased Google Assistant Enabled Devices had Google disclosed these practices.

72. Plaintiffs, individually and on behalf of the Class, seek: an injunction requiring Google to obtain consent prior to recording a minor's Google Assistant interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; and any other relief which the court deems proper.

73. Pursuant to §1782(a) of the CLRA, on July 25, 2019, Plaintiffs' counsel notified Defendants in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act. If Defendants fail to respond to Plaintiffs' letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiffs will move to amend their Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate against Defendants. As to this cause of action, at this time, Plaintiffs seek injunctive relief and attorneys' fees and costs pursuant to §1780(e).

**FOURTH CLAIM FOR RELIEF**
**Violation of the Declaratory Judgment Act**
**28 U.S.C. §2201,** *et seq.*
**(On Behalf of Plaintiffs and the Class)**

74. Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

75. Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the federal and state statutes described in this complaint.

76. An actual controversy has arisen in the wake of Defendants' recording of Plaintiffs and Class members' communications without their consent and Defendants' common law and statutory duties, which prohibit Defendants from eavesdropping or recording confidential communications.

77. Plaintiffs continue to suffer injury and damages as described herein as Defendants continue to record Plaintiffs' and Class members' communications, including communications by minors whose consent to record Defendants cannot obtain.

78. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. Defendants continue to owe a legal duty to not record Plaintiffs' and Class members' confidential communications under, *inter alia*, the common law, California Invasion of Privacy Act, Cal. Penal Code §632, and California Family Code §6710;

    b. Defendants continue to breach their legal duties by continuing to record Plaintiffs' and Class members' confidential communications; and

    c. Defendants' ongoing breaches of its legal duty continue to cause Plaintiffs and the Class harm.

79. The Court should also issue corresponding injunctive relief requiring Defendants to cease recording Plaintiffs' and Class members' confidential communications. This injunction should direct Defendants to alter the data recording practices on all Google Assistant Enabled Devices and to prohibit such devices from recording confidential communications, including any communications by minors.

80. If an injunction is not issued, Plaintiffs will suffer irreparable injury and lack an adequate legal remedy in the event of Defendants' ongoing conduct

81. California law prohibits the recording of oral communications without the consent of all parties to the communication. California's privacy laws recognize the unique privacy interest implicated by the recording of someone's voice. That privacy interest has been heightened by companies exploiting consumers' private data. Given that Defendants continue to record confidential communications, including those of minors, the risk of continued violations of California law is real, immediate, and substantial. Plaintiffs do not have an adequate remedy at law because many of the resulting injuries are reoccurring and Plaintiffs will be forced to bring multiple lawsuits to rectify the same conduct.

82. The hardship to Plaintiffs and the Class if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued. On the other hand, the cost to Defendants of complying with an injunction by complying with California law and by ceasing the recording of confidential communications is relatively minimal, and Defendants have a pre-existing legal obligation to avoid invading the privacy rights of consumers.

83. Issuance of the requested injunction will serve the public interest by preventing ongoing recording of confidential communications without consent, and recording of confidential communications of minors, thus eliminating the injuries that would result to Plaintiffs, the Classes, and the potentially millions of consumers who own or use Google Assistant Enabled Devices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the proposed Class respectfully request that the Court enter an order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing their counsel as class counsel;

B. Declaring that Google's actions, as set out above, violate California's privacy laws cited herein;

C. Declaring that Google's actions, as set out above, violate California's Business & Professions Code cited herein;

D. Declaring that Google's actions, as set out above, violate California's Civil Code cited herein;

E. Requiring Google to delete all recordings of the Class members, and to implement functionality to prevent further recording of the Class members without prior consent;

F. Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiffs and the Class in the amount to be determined at trial;

G. Awarding Plaintiffs and the Class their costs of suit, including reasonable attorneys' and experts' fees and expenses;

H. Awarding Plaintiffs and the Class pre-and post-judgment interest, to the extent allowable;

I. Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Class; and

J. Awarding such other and further relief as the Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

Dated: July 30, 2019								**LEXINGTON LAW GROUP**

*/s/ Mark N. Todzo*
Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
503 Divisadero Street
San Francisco, CA  94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com

Vincent Briganti (*pro hac vice* forthcoming)
Christian Levis (*pro hac vice* forthcoming)
Ian Sloss (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
isloss@lowey.com

Joseph P. Guglielmo (*pro hac vice* forthcoming)
Erin Green Comite (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

E. Kirk Wood (*pro hac vice* forthcoming)
WOOD LAW FIRM
P. O. Box 382434
Birmingham, AL 35238
Telephone:  (205) 612-0243
kirk@woodlawfirmllc.com

*Attorneys for Plaintiffs*